UNITED STATES of America, Appellee,

v.

John Guy CARTANO, Appellant.

No. 75–1834.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 9, 1976.

Decided April 13, 1976.

Gerald T. Sullivan, Keyes & Crawford, Cedar Rapids, Iowa, for appellant.

Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This direct criminal appeal is taken by appellant, John Guy Cartano, following his conviction by a jury for interstate transportation of illegal gambling devices in violation of 18 U.S.C.A. § 1953 (1975). The issues raised on appeal include the sufficiency of the indictment, the constitutional validity of the Iowa gambling statute then in force, the adequacy of the instruction on the Iowa gambling statute, and the sufficiency of the evidence. We affirm.

Appellant Cartano was indicted by a federal grand jury on August 21, 1975, for violations of 18 U.S.C.A. §§ 1953 and 1955 arising out of his alleged conducting of an illegal gambling business involving the distribution and sale of football parlay cards [1] in the vicinity of Cedar Rapids, Iowa. Specifically, Count 1 charged Cartano and six other men with conducting an illegal gambling business in violation of 18 U.S.C.A. §§ 2 and 1955 involving the sale of football parlay cards and the taking of bets on athletic events in violation of Iowa Code §§ 726.1, .3, .6 (1973). Count 2 alleged that on or about October 8, 1974, Cartano, in violation of 18 U.S.C.A. §§ 2 and 1953, had carried in interstate commerce from Minneapolis, Minnesota, to Cedar Rapids, Iowa, approximately 200 football parlay cards de-

---

1. Football parlay cards contain weekly listings of major college and professional football games and include the point margins by which various teams are favored to win or lose. In addition, the cards contain certain odds according to which winners are paid. For example, five to one odds may be paid if three out of three winning teams are picked. The cards also contain a blank to indicate the amount of money bet on that particular card.

signed for use in wagering pools on sporting events.

Prior to trial, Cartano filed a motion to dismiss the charges based upon the alleged insufficiency of the indictment and the claimed unconstitutionality of the Iowa gambling statute in effect at that time, Iowa Code § 726.12 (1973).[2] The district court[3] overruled that motion on October 10, 1975. Cartano's trial began on October 14, 1975, and resulted in his acquittal on Count 1 and conviction on Count 2. Post-trial motions for acquittal and for a new trial were denied by the district court. Cartano was sentenced to three years probation and fined $1,000. This appeal followed.

The facts in this case are not in dispute. The record reveals that on October 8, 1974, a package addressed to John Cartano containing approximately 200 football parlay cards arrived in Cedar Rapids, having been sent from Minneapolis by Emery Air Freight. Emery authorities had opened the package after becoming suspicious that its contents were other than the "Machine Parts" label indicated. Upon discovery of the parlay cards, the FBI was notified, and the package was shown to an agent who removed three cards. Delivery of the package was thereafter made to Cartano.

An investigation of Cartano's suspected gambling activities ensued. Examination of Emery Freight records uncovered two prior shipments to Cartano from Minneapolis. Four other prior shipments from Minneapolis to Cartano were stipulated as having been made. Subsequent to October 8, Cartano received one more Minneapolis shipment via Emery. In addition, a package addressed to "Joe Carnes" at the 19th Hole Bar in Cedar Rapids was accepted by Cartano, who was a former employee and regular patron at the bar, on October 24, 1974. By the end of October, Cartano had stopped receiving parlay cards from Minneapolis and was having them printed locally.

Surveillance of Cartano subsequent to October 8 indicated that he was making the parlay cards available to patrons of three bars and a barbershop in the Cedar Rapids area. All the money received through the placing of bets in connection with the cards went to Cartano. The distribution of the parlay cards continued until November 22, 1974, when the FBI, pursuant to search warrants, entered Cartano's home and the businesses where the cards were sold. Various parlay cards were seized in the raids in addition to approximately $200 in wagered cash.

Evidence was adduced at trial from an FBI statistics and probabilities expert that the odds set forth on the parlay cards were far more favorable to the distributor of the cards than the true odds. The expert testified that the distributor did not bet on an equal basis with his customers. For example, if 10 out of 10 winning teams were picked, a $1 bet paid $100. The true odds against picking 10 out of 10 winners were 1 in 1,024.

In his trial testimony Cartano admitted that he used the football parlay cards for the purpose of wagering on football games, that he accepted bets placed on these cards, and that he was making these cards available through various establishments to individuals, not all of whom were familiar to him. However, Cartano maintained that he believed these gambling activities constituted merely social gambling and were not illegal under Iowa law as it existed at that time.

The first issue we consider on this appeal is whether Count 2 of the indictment alleged all the elements of the offense so as to properly apprise Cartano of the charges against him. Appellate contends that Count 2 was defective because it did not make specific reference to the illegality of football parlay cards under Iowa Code § 726.12 (1973), an element necessary to prove a violation of 18 U.S.C.A. § 1953. In

2. The statute primarily involved in this appeal, Iowa Code § 726.12 (1973) was in effect from June 2, 1973, until July 17, 1975, at which time it was repealed.

3. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

addition, it is alleged that the indictment was deficient in that it did not negative the statutory exceptions to the general prohibition against gambling under section 726.12. We disagree with both contentions.

The basic test for the sufficiency of an indictment is whether it informs the defendant of what he is accused of in order to enable him to prepare his defense and to afford him protection against being placed in jeopardy a second time for the same crime. *United States v. Debrow,* 346 U.S. 374, 377–78, 74 S.Ct. 113, 115, 98 L.Ed. 92, 97 (1973); *Hagner v. United States,* 285 U.S. 427, 431–33, 52 S.Ct. 417, 419, 76 L.Ed. 861, 865 (1932). To that end, Fed.R.Crim.P. 7(c) requires simply that the indictment contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." The challenged indictment in the instant case meets these requirements.

Count 2 of the indictment handed down against Cartano read as follows:

> On or about October 8, 1974, in Cedar Rapids, Linn County, in the Cedar Rapids Division of the Northern District of Iowa, JOHN GUY CARTANO did knowingly, in violation of Sections 2 and 1953 of Title 18, United States Code, carry in interstate commerce from Minneapolis, Minnesota, to Cedar Rapids, Linn County, in the Cedar Rapids Division of the Northern District of Iowa, about two hundred tickets, bills, slips, papers and writings commonly referred to as football parlay cards used and to be used and designed for use in wagering pools with respect to sporting events, that is, college and professional football games.

The indictment specifically indicates the federal criminal statutes which Cartano is charged with violating and describes with particularity the act which allegedly constituted the offense. If appellant believed that the indictment lacked specificity, the appropriate course of action would have been to seek a Bill of Particulars. *See United States v. Glup,* 482 F.2d 1288, 1290 (8th Cir. 1973). None was sought in the instant case.

The fact that the indictment did not set forth the manner in which Cartano's actions violated the Iowa gambling laws does not render the indictment insufficient. There is no requirement that the elements of the underlying state offense be set forth in the indictment. *See United States v. Rizzo,* 418 F.2d 71, 74 (7th Cir. 1969); *United States v. Halmo,* 386 F.Supp. 593, 598 (E.D.Wis.1974). In addition, no prejudice has been shown to result from the failure to set forth the specific Iowa statute in the indictment. Absent such a showing, we will not set aside the indictment or the conviction. *United States v. Haley,* 478 F.2d 766, 768 (8th Cir. 1973); *Tanksley v. United States,* 321 F.2d 647 (8th Cir. 1963). *See also United States v. Calabro,* 467 F.2d 973, 981 (2d Cir. 1972). Further, examination of the record discloses beyond a doubt that Cartano and his counsel were "fully aware of the nature of the charges at all times." *United States v. White,* 475 F.2d 1228, 1231 (4th Cir. 1973); Fed.R.Crim.P. 7(c)(3). *Cf. United States v. Berlin,* 472 F.2d 1002, 1007 (2d Cir. 1973). Appellant is not entitled to relief on this ground.

Similarly, there is no merit to appellant's contention that the indictment is fatally defective because it does not negative the exceptions set forth in the Iowa gambling statute then in force, Iowa Code § 726.12 (1973). As a general rule, it is

> the defendant's burden to prove as an affirmative defense that his conduct fell within the legislative exception, and there was no necessity for the indictment to allege that it was not. *McKelvey v. United States,* 1922, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301, 304; *Tritt v. United States,* 10 Cir., 1970, 421 F.2d 928, 929–930; *Hockenberry v. United States,* 9 Cir., 1970, 422 F.2d 171, 173.

*United States v. Ramzy,* 446 F.2d 1184, 1186 (5th Cir. 1971). *See also Bistram v. United States,* 237 F.2d 243, 245 (8th Cir. 1956).

Appellant next contends that Iowa Code chapter 726 (1973) as amended was unconstitutionally vague and indefinite. Specifically, appellant argues that the interrela-

tionship of section 726.12(5)[4] and section 99A.1[5] created such confusion as to the legality of certain forms of gambling in Iowa that it failed to give adequate notice as to what constituted illegal acts. Appellant asserts that this lack of notice violated his right to due process. While the Iowa statute then in effect was certainly not a model of clarity, we agree with the district court's conclusion that it was not constitutionally inadequate and thus reject appellant's contentions.

■ As stated by the Supreme Court, a statute will be found to be void for vagueness if it

"fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *United States v. Harriss,* 347 U.S. 612, 617 [74 S.Ct. 808, 811, 98 L.Ed. 989, 996], and because it encourages arbitrary and erratic arrests and convictions. *Thornhill v. Alabama,* 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093]; *Herndon v. Lowry,* 301 U.S. 242 [57 S.Ct. 732, 81 L.Ed. 1066].

*Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972). With specific reference to the first of these tests, a statute may be vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217 (1971). *See also Parker v. Levy,* 417. U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439, 457 (1974); *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). Under these standards, Iowa Code § 726.12 (1973) survives constitutional attack on

**4.** Iowa Code § 726.12 (1973) provided as follows:

726.12 Participation by natural persons

Natural persons may participate in games of skill, games of chance, card games played for money with ordinary playing cards, wagers, bets, pools, or raffles provided:

1. The game or activity described in this section is incidental to a bona fide social relationship and is not conducted in whole or in part on or in any property subject to chapter 297, relating to school houses and school house sites.

2. All participants, sponsors, and promoters of the game or activity are natural persons.

3. The game or activity is conducted in a fair and honest manner.

4. No person receives or has any fixed or contingent right to receive, directly or indirectly, any profit, remuneration, or compensation from or as a result of the game or activity, except any amount which he may win as a participant on the same basis as the other participants.

5. No gambling device as defined in section 99A.1 is used in or for the game or activity, except poker tables, devices required for a game of skill or game of change as defined in Chapter 99B, or tickets, sheets, or writings reasonably necessary for a game or activity permitted by this section.

6. If a wager, bet, or pool relates to an athletic event or contest for which spectators pay any admission fee or charge or which is authorized or sponsored by one or more schools, educational institutions, or interscholastic athletic organizations, no person participating in the wager, bet, or pool is a coach, official, player, or contestant in the athletic event or contest.

7. No participant wins or loses more than a total of five hundred dollars in all games and activities permitted by this section during any period of twenty-four consecutive hours.

If any provision of subsections 2 to 7 is violated, the game or activity shall be unlawful because of this violation only with respect to any person who knows of or has reasonable grounds to suspect such violation.

Added by Acts 1973 (65 G.A.) ch. 153, § 20, eff. June 2, 1973.

**5.** Iowa Code § 99A.1 (1973) provided in relevant part as follows:

99A.1 Definitions

For the purpose of this chapter, the words, terms, and phrases defined in this section shall have the meanings given them.

1. "Gambling devices" means roulette wheels, klondike tables, poker tables, punchboards, faro layouts, keno layouts, slot machines, any ticket, sheet, or writing of any kind used or designed to be used for gambling purposes, and all machines and devices used for gambling or with an element of chance attending operation, and all machines and devices of any nature whatsoever adapted, devised and designed for the purpose of gambling. Nothing in this definition shall be construed to include ordinary playing cards.

Gambling device does not include any device or machine used in accordance with Chapter 99B or section 726.12.

vagueness grounds. A reading of that provision and the other statutes referred to therein reveals a legislative intent to allow limited social gambling while retaining the general prohibition against gambling. While arguable "imprecise," these standards for determining when gambling is deemed to be social are nonetheless "comprehensible." The elements listed under section 726.12 provided fair notice to all persons of the bounds of allowable conduct and afforded adequate guidelines for enforcement and adjudication. *See generally Smith v. Goguen,* 415 U.S. 566, 572–76, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605, 611 (1974).[6]

Next we consider appellant's claim that the trial court erred in its instruction to the jury as to what gambling was then legal in Iowa. The court's Instruction 15 paraphrased Iowa Code § 726.12 (1973), leaving out subsections 5 and 6. (*See* n. 4 *supra.*) Appellant contends that this omission constituted error, as did the court's failure to define the statutory phrase "bona fide social relationship" or to explain the statute's scienter requirement. Instead, appellant submits that his requested instructions should have been given to the jury. We disagree.

The trial court has broad discretionary power in instructing the jury. When reviewing the adequacy of instructions, we must consider the charge as a whole. *United States v. DeCoteau,* 516 F.2d 16, 17–18 (8th Cir. 1975); *United States v. Nance,* 502 F.2d 615, 619 (8th Cir. 1974). Viewed in this manner, the instructions in the instant case adequately conveyed the relevant Iowa law on gambling to the jury.

▮▮▮ Appellant had no right to have the Iowa statute read to the jury in its entirety. *Bass v. United States,* 324 F.2d 168 (8th Cir. 1963). Nor was the court required to use the language suggested by the appellant in his requested instruction. *Nance, supra,* 502 F.2d at 619. The statutory subsections omitted from the instruction were not supported by the evidence presented. Thus the failure to include them was not error. *McDonnell v. United States,* 472 F.2d 1153, 1156–57 (8th Cir. 1973). In addition, the phrase "bona fide social relationship" did not require further definition inasmuch as it is a term which is within the common understanding of a juror. *Bohn v. United States,* 260 F.2d 773, 779 (8th Cir. 1958). *See also United States v. Crockett,* 506 F.2d 759, 762 (5th Cir. 1975). Finally, the knowledge requirement under the Iowa statute was adequately set forth in the instructions as a whole.

The final issue raised on appeal is the sufficiency of the evidence to support appellant's conviction on Count 2 of the indictment. Appellant argues that there was insufficient proof as to the illegality of football parlay cards in Iowa and to Cartano's knowledge of that illegality as required under Iowa law. These contentions are without merit.

Our review of the record is guided by the principle that "this court must view the evidence in the light most favorable to the jury's verdict and accept all reasonable inferences that flow from that evidence in support of the verdict." *United States v. Baumgarten,* 517 F.2d 1020, 1026 (8th Cir. 1975).

▮▮▮ The evidence in the record before us establishes, inter alia, (1) that football parlay cards were sent to appellant Cartano, with his knowledge, from Minneapolis to Cedar Rapids in a box marked "Machine Parts"; (2) that on another occasion parlay cards were sent to Cartano under the fictitious name "Joe Carnes"; (3) that appellant Cartano was concerned over the possible illegality of his actions; (4) that, based on

---

6. Appellant has not specifically attacked Iowa Code § 726.12 (1973) on overbreadth grounds. We note, however, that such an effort by him would have been unsuccessful. The challenged statute clearly prohibits the kind of conduct in which the evidence in the instant case showed appellant to be engaged, namely, the selling of football parlay cards for profit in connection with non-natural persons. Thus, Cartano is without standing to raise a general overbreadth claim not grounded in the First Amendment. *Parker v. Levy, supra,* 417 U.S. at 759–61, 94 S.Ct. at 2563, 41 L.Ed.2d at 459; *Broadrick v. Oklahoma,* 413 U.S. 601, 609–16, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830, 838 (1973).

the odds used, the type of operation engaged in by appellant Cartano could be expected to return a profit ranging from 37 to 90 percent; (5) that Cartano was making these parlay cards available at business establishments to the general public; (6) that Cartano admitted to the FBI on one occasion that he was making "a couple hundred a week" from his gambling operation; and (7) that appellant Cartano, during the course of his investigation by the FBI, attempted to avoid the investigators and, on one occasion, attempted to destroy and hide the evidence of his gambling operation. From this evidence the jury could conclude that the sale of these football parlay cards was illegal under existing Iowa law and that appellant Cartano possessed requisite knowledge that his actions were illegal under Iowa Code § 726.12 (1973). *See United States v. Cummins,* 507 F.2d 324, 329–30 (8th Cir. 1974).

Affirmed.