UNITED STATES of America, Appellee,

v.

Ramon Castro GARCIA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Ramon Castro DOMINICCI,
Defendant, Appellant.

Nos. 85–1713, 85–1714.

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1987.

Decided May 13, 1987.

Antonio Jimenez Miranda, Old San Juan, P.R., by appointment of the Court, for defendant, appellant Ramon Castro Garcia.

Wally De La Rosa Vidal, Hato Rey, P.R., for defendant, appellant Ramon Castro Dominicci.

Charles E. Fitzwilliam, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and BOWNES, Circuit Judge.

COFFIN, Circuit Judge.

Appellants are a father and son who were convicted of federal firearms violations. They complain of a number of errors in their joint trial, including the government's failure to produce sufficient evidence to sustain their convictions. After careful review of the record, we reverse the convictions of both men on one count, but uphold the jury's verdicts on the remaining counts.

* Of the Fifth Circuit, sitting by designation.

## I. *Factual Background*

Ramon Castro Garcia is a federally licensed firearms dealer. On January 22, 1985, Castro Garcia and his son, Ramon Castro Dominicci, flew from Shreveport, Louisiana to Puerto Rico, carrying in their baggage four guns, which the father properly declared at the ticket counter. Several hours after arriving, they made their way to the home of relatives in Ponce, discovered there was no room for them to stay and, after visiting for a while, went to a hotel for the night. They returned to the relatives' home between 8:30 and 9 a.m. the next morning.

Up to this point in time, there is no significant dispute about appellants' actions.[1] The pivotal events occurred after appellants returned to their relatives' home, and the accounts of those events differ markedly in certain critical respects. A police officer testified that he received a telephone tip that an older man with a rented yellow car would be coming to the relatives' address and would transfer weapons to Lorenzo Hernandez Lopez, also known as Cano Bufi, who would be accompanied by a man named Siquin, a known drug dealer. Four officers went to the address and, as they arrived, they saw two individuals get out of a yellow vehicle, take a suitcase from the trunk of the car, and enter the house. The two individuals were identified as appellants. A short time later, the officers saw Cano Bufi walk down the street and call to the interior of the house. Appellants then came out of the residence, greeted Cano Bufi, and the three men crossed the street together while they talked. Siquin then drove up in a van. Appellants and Cano Bufi crossed back to the side of the street where the yellow car was parked. Castro Garcia opened the trunk and took out an executive briefcase that he handed to Cano Bufi. Cano Bufi

got into the van with Siquin and those two started to drive off.

Police officers pursued the van,[2] which entered a nearby housing project and then slowed down. Cano Bufi jumped out, dropping the briefcase, which opened to display several weapons.[3] Siquin and Cano Bufi were both apprehended and arrested, and the officers then returned to appellants' relatives' house, but the father and son were not there. The officers took the yellow rental car to the police station. According to police testimony, an engraving tool, which may have been used to obliterate the serial numbers on the seized weapons, was found in a suitcase in the car.

Appellants, meanwhile, claim that they left the rented yellow car parked in front of the house that morning while they went to rent a second car for Castro Dominicci, who was going to stay in Ponce while his father traveled elsewhere to take care of his gun business. According to their testimony, Castro Dominicci's uncle, Georgie Dominicci, happened to drive by as they were about to leave and offered them a ride to the rental agency. When they returned to the house, the yellow rental car was gone. They were told by relatives in the house that police officers had searched the house, arrested another uncle, Wiso Dominicci, and confiscated the car. The police officers denied arresting the uncle. There is no dispute that appellants went to the police station in pursuit of their car, and were arrested.

Appellants maintain that they went to Puerto Rico so that Castro Garcia could transact a legitimate firearms transaction with the aid of Carmen Nydia Vazquez, an acquaintance of the father who was in business with an individual properly licensed to sell firearms in Puerto Rico. Appellants suggest either that the police officers, who

---

1. Appellants claim that immediately after arriving in Puerto Rico they went to Bayamon, where Castro Garcia was to conduct a legitimate firearms deal with a business associate. The associate's shop, however, was closed. The government casts doubt on this part of appellants' story—since the government rejects the "legitimate deal" theory—but the actual whereabouts of appellants between their arrival at the

airport and their arrival at the relatives' home is not significant to the prosecution's case.

2. The officers first attempted to stop the van by using their siren and identifying themselves, but the driver continued on.

3. The briefcase also contained ammunition.

they claim first arrested Wiso Dominicci, either mistook their identity or simply concocted a story of an illegal firearms deal to cover improprieties in the arrest of Cano Bufi, who was a known drug dealer targeted by the police for arrest. Appellants also suggest that Cano Bufi must have stolen the guns from the trunk of the yellow rental car. They point out how illogical it would be for them to conduct an illegal firearms deal in broad daylight, and they argue that Carmen Nydia Vazquez, the supposed business associate, lied when she testified that she had received no phone call from Castro Garcia during the time he was in Puerto Rico. They also point to inconsistencies in the testimony of different police officers.

Count I of the indictment charges both appellants with violating 18 U.S.C. § 922(b)(2), which makes it unlawful for a licensed firearms dealer to sell or deliver a firearm to anyone in any state where the purchase or possession of a firearm by such person would violate state law. Count II charges Castro Garcia, as a federally licensed firearm dealer, with failing to properly record the transfer of the weapons, in violation of 18 U.S.C. § 922(b)(5) and 26 C.F.R. § 178.124(a)–(c). Count III charges both men with a violation of 18 U.S.C. § 922(d)(1), which makes it unlawful for a licensed dealer to provide a firearm to someone if the dealer knows or has reasonable cause to believe that the recipient is under indictment for, or has been convicted of, a crime punishable by imprisonment for more than one year. Appellants were found guilty on all counts. They make five claims on appeal: that the evidence was insufficient against them; that comments by the trial judge denied them a fair trial; that comments by the prosecutor denied them a fair trial; that the district court committed prejudicial error in refusing to admit into evidence a photocopy of a tele-

phone bill; and that Count I of the indictment was fatally defective.

## II.   *Sufficiency of the Evidence*

A.   *Count III: knowing disposition of a firearm to an individual charged with or convicted of a crime punishable by more than one year in prison.* [4]

We consider Count III first because our discussion is identical for both appellants and because it is the only count on which we reverse the judgment below. Appellants claim that the government failed to present any evidence showing they knew that Cano Bufi either was under indictment for, or had been convicted of, a criminal offense subjecting him to imprisonment for more than one year. We substantially agree, and we therefore find no basis on which the jury properly could have convicted either appellant on this count. Although a factual stipulation signed by appellants stated that Cano Bufi was under indictment for such crimes and also had been convicted of such crimes, there was nothing linking this information to the appellants at the time of the firearms transfer. In response to a motion for acquittal on this point, the district court pointed to evidence that Cano Bufi had had contact with Georgie Dominicci, appellants' brother-in-law and uncle. We think this falls far short of evidence sufficient for a jury to find beyond a reasonable doubt that Castro Garcia and Castro Dominicci were aware of the specifics of Cano Bufi's criminal record. Although the evidence permitted an inference that appellants knew this was an illegal weapons transaction, that is simply not enough to sustain the convictions. Something more was required to prove the specific knowledge charged as part of a violation of 18 U.S.C. § 922(d)(1). Accordingly, both appellants' convictions on Count III must be reversed.

---

**4.** 29 U.S.C. § 922(d)(1) states:

(d) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

**B.** *Count I: transfer of firearm to individual whose purchase or possession of such firearm violates state law.* [5]

(1) *Castro Garcia.* Appellant Castro Garcia's brief points to inconsistencies in the police officers' testimony at trial and raises a number of questions about the honesty and motivation of these officers in an effort to depict the police version of the gun transaction as an "unbelievable story" designed to cover up violations of Cano Bufi's constitutional rights. Much of Castro Garcia's argument turns on the credibility of witnesses and more properly would form a closing argument at trial than an argument on appeal that the verdict was not supported by sufficient evidence. On appeal, we must " 'view the evidence, together with all reasonable inferences that may legitimately be drawn therefrom, in the light most favorable to the government.' " *United States v. Glover,* 814 F.2d 15, 16 (1st Cir.1987) (quoting *United States v. Campa,* 679 F.2d 1006, 1010 (1st Cir. 1982)). We are neither to weigh conflicting evidence nor pass on the credibility of witnesses. *United States v. Rivera Rodriguez,* 808 F.2d 886, 889 (1st Cir.1986).

■ With this standard in mind, we cannot say that the evidence in this case is insufficient to support the jury verdict against Castro Garcia on Count I. Police officers testified that they received a tip about an impending weapons transaction, and consistent with the information provided to them, they saw Castro Garcia and Castro Dominicci converse with Cano Bufi and transfer a briefcase containing firearms to him. Appellants stipulated that Cano Bufi was not licensed under Puerto Rico law to possess or carry any type of firearms in the Commonwealth. Thus, we think a jury could find beyond a reasonable doubt that Castro Garcia violated 18 U.S.C. § 922(b)(2) by delivering guns to Cano Bufi.

■ (2) *Castro Dominicci.* Appellant Castro Dominicci's argument that the evidence against him was insufficient to support a conviction on Count I presents a closer case, but we nevertheless conclude that a jury could properly find him guilty beyond a reasonable doubt. With regard to Castro Dominicci, the question is whether there is evidence to support a jury finding that he was guilty at least as an aider and abettor. Our answer must be guided by the test set out in *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769–70, 93 L.Ed. 919 (1949):

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." L. Hand, J., in *United States v. Peoni,* 100 F.2d 401, 402 [2nd Cir. 1983].

In applying this test, we repeatedly have held that "[m]ere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting." *United States v. Paone,* 758 F.2d 774 (1st Cir.1985) (citations omitted); *United States v. Mehtala,* 578 F.2d 6, 10 (1st Cir.1978).

■ Although conceding that intimacy with his father was undoubtedly a factor considered by the jury, appellant Castro Dominicci argues that that bit of circumstantial evidence alone is insufficient to sustain his conviction and that there was no other evidence of his deliberate association with an illegal sale of firearms. Of particular significance to us, however, was

---

**5.** 18 U.S.C. § 922(b)(2) states:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

(2) any firearm or ammunition to any person in any State where the purchase or possession by such person of such firearm or ammunition would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance;

. . . .

Castro Dominicci's participation with his father in the conversation with, and firearms delivery to, Cano Bufi. Castro Dominicci's presence with his father at other times during the trip to Puerto Rico is consistent with the claim that he was merely along for the ride as a way to visit relatives. But not only do we think it permissible, we think it most logical, for a jury to infer affirmative participation in the crime from Castro Dominicci's appearance with his father after Cano Bufi called into the relatives' house on the morning of the transaction. Both men came out, both crossed the street with Cano Bufi, and both returned to the yellow rental car where Castro Garcia handed the briefcase to Cano Bufi. We think it reasonable for a jury to conclude beyond a reasonable doubt that had Castro Dominicci not been an affirmative participant in the gun delivery, he would have stayed in the house to visit with relatives while his father transacted business outside. Castro Dominicci's emergence from the house with his father distinguishes this case from one of mere presence at the scene of a crime. *Cf. United States v. Mehtala*, 578 F.2d at 6. *See United States v. Paone*, 758 F.2d at 776 (appellant's presence at several critical steps of a drug transaction made it reasonable for jurors to conclude appearances not coincidental and that appellant was a participant who sought to bring about cocaine sale). Even if Castro Dominicci had thought he was assisting a legal sale—and the jury properly may have inferred otherwise—he would still be liable under 18 U.S.C. § 922(b)(2), which contains no requirement of guilty knowledge.

We note, moreover, that the jurors, at their request, were reread the accomplice instruction, which fully set forth the test for aiding and abetting we have outlined above. We therefore think they took seriously their obligation to weigh the evidence against Castro Dominicci separately from that against his father. It is not our function to second-guess their considered judgment so long as their interpretation of the evidence is reasonable. *See United States v. Guerrero-Guerrero*, 776 F.2d 1071, 1075 (1st Cir.1985).

## C. *Count II: failure to properly record transfer of the weapons.*

Under 18 U.S.C. § 922(b)(5), it is unlawful for a federally licensed firearms dealer to sell or deliver a gun "unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person...." Although the language of this section—prohibiting the sale or delivery of a gun *"unless"* a record of the transaction is made—could be read to require that the record entry be made before disposition of the weapon, Special Agent Jerry Dennis of the Bureau of Alcohol, Tobacco and Firearms testified that a dealer has several days after a sale to record the disposition in his logbook, which is kept at his place of business. Since Castro Garcia was arrested within hours of the transaction with Cano Bufi, he argues that it was physically impossible for him to comply with the law and, therefore, that he may not be convicted on Count II.

■ We agree with appellant on this particular point. Castro Garcia's arrest meant that even if he intended to comply with the law as presented by the government in this case, he could not do so; he was in custody in Puerto Rico and his record book was in Louisiana. This does not end the matter, however. In addition to the logbook kept on their business premises, firearms dealers are required to obtain a Form 4473 from any purchaser who is not a licensed dealer. *See* 18 U.S.C. § 923(g) (requiring firearms dealer to maintain records of the sale or other disposition of firearms "at such place, for such period, and in such form as the Secretary may ... prescribe"); 27 C.F.R. § 178.124(a) (requiring firearms dealer to fill out Form 4473, "a firearms transaction record," showing the name, address and personal data about the transferee as well as identifying information about the firearm). The regulations make clear that Form 4473, parts of which must be filled out by the purchaser, is to be obtained before a sale or delivery is consummated. *See* 27 C.F.R. § 178.124(b), (c); *United States v. Newman*, 628 F.2d 362,

367 (5th Cir.1980).[6] Since appellant Castro Garcia stipulated that he has no Form 4473 covering the four guns recovered from Cano Bufi, we conclude that it was proper for the jury to convict him on Count II of the indictment, which specifically charged failure to comply with the requirements of 18 U.S.C. § 923 and violation of 27 C.F.R. §§ 178.124(a), (b) and (c).

### III. *Comments by the Trial Judge*

■ Appellant Castro Garcia complains that two series of comments by the trial judge prejudiced his trial and require that his conviction be overturned. An initial obstacle to his claim is that appellant failed to object at trial to either of the comments, and the issue is thus reviewable on appeal only for plain error. *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); *United States v. Glantz*, 810 F.2d 316, 324 (1st Cir.1987).

The first challenged comments occurred when appellant sought to use an interpreter for his testimony. After determining that appellant could speak English, the judge made the following comment:

> Now, ladies and gentlemen of the jury, if a man knows English, I do not see any reason why he should testify in Spanish. The language here is English. I do not think anybody should have any sort of advantage in having two cracks at the same question and the question would have to be placed to him first in English and then in Spanish, and I do not think anybody should have that advantage. This man knows English and he can testify in English.

Appellant then asked if he could say something, to which the judge responded: "No, no, you cannot say something. You answer questions from your lawyer. That is all you can say here."

Appellant argues that the judge's comments implied to the jury that appellant wanted two chances to hear each question so that he would have more time to fabricate an answer. And, appellant argues, the suggestion that he would lie on the witness stand seriously undermined the fairness of a trial that turned largely on witness credibility.

■ We think the trial judge overstepped his bounds in addressing these comments to the jury. His comments could have been construed to suggest that appellant requested an interpreter to gain an unfair advantage when it may well have been that appellant thought he had an option and believed the jury would better understand his answers if they were translated from his native Spanish. A much preferable approach to this situation would have been to deny the request for an interpreter with a simple statement that it is inappropriate to use one when the witness understands and is able to speak English.

Despite our view that this situation should have been handled with more discretion, we nevertheless have no doubt that the judge's comments do not rise to the magnitude of plain error. The judge made no reference to appellant's credibility and his comments may have been viewed simply as a statement of the rules of the game in a courtroom: witnesses are supposed to answer questions the first time they are asked and understood. Moreover, the judge specifically instructed the jurors before their deliberations that his ordering appellant to testify in English was of no concern to them. The equivocal nature of the comments combined with the judge's instruction convinces us that appellant was not harmed by these comments.

The second challenged statements occurred when appellant was asked if he recognized the four weapons taken from Cano

---

**6.** The requirement in 27 C.F.R. § 178.124(c) applies to "an over-the-counter transfer of a firearm to a non-licensee who is a resident of the State in which the licensee maintains his business". Although this case did not involve a transfer to a resident of Louisiana, where appellant maintains his business, sales or deliveries to out-of-state residents are prohibited, with certain exceptions not relevant here, and so we construe the recording requirements of section 178.124(c) to apply as if this case involved an otherwise proper disposition of the firearms. *See* 18 U.S.C. § 922(b)(3) (limiting firearms sale or delivery to residents of the state in which dealer has place of business).

Bufi. The transcript shows that the following dialogue then took place among appellant, the court, and appellant's lawyer:

Appellant: I believe—I cannot say for sure without the serial number. I believe they are mine.

Lawyer: Could you go over what the last part you said [sic] of your testimony? You believe they are yours but what?

Appellant: I cannot state for sure without the serial number.

Court: "I believe they are mine without the"—

Appellant: Without the serial number.

Court: Without the number.

Lawyer: No, he said he cannot state for sure if they are his.

Court: "I believe they are mine," he said, "because the number has been erased." I refer to the record.

Lawyer: Let us go to the record, your Honor, because that is not what the witness said.

(The record is read by the reporter.)

Lawyer: There is a difference.

Court: I do not see any difference.

Appellant argues that the court through its comments told the jurors, in effect, that appellant was confessing to erasing the serial numbers. As a result, appellant argues, it was logical for the jurors to infer that he had erased the numbers for the purpose of criminally disposing of the firearms, and that he therefore should be found guilty.

■ We think appellant exaggerates the impact of the judge's comments. Assuming the transcript accurately reflects appellant's original response to the question, the judge obviously erred in his recharacterization of appellant's answer. But we believe that this error must have been obvious to the jurors after the record was reread by the court reporter. Moreover, the jurors were instructed that they were the fact-finders, and that they should not be influenced by any comments concerning the facts made by the court. Accordingly, we conclude that appellant was not harmed by the court's statement, and that the mistake therefore was not plain error.

### IV. *Prosecutor's Comments*

Appellant Castro Garcia also challenges several comments made by the prosecutor during rebuttal. Again, appellant failed to object at trial, and our evaluation of this claim must therefore be made under the "plain error" standard.

■ Appellant claims primarily that the prosecutorial remarks in question represented improper comment on his silence. Appellant, however, testified at trial and thus the issue can not be whether the prosecutor impermissibly referred to his failure to take the stand. *Cf., e.g., United States v. Glantz*, 810 F.2d at 316. We therefore consider only appellant's apparent argument that the government improperly shifted the burden of proof by pointing to gaps in the evidence presented by him and by directly commenting on his credibility.

■ We find no merit in appellant's argument. All of the challenged comments were made on rebuttal, after defense attorneys had offered their own hypothetical versions of the critical events and also had suggested that the testifying police officers had lied in order to cover up improprieties in the arrest of Cano Bufi. We fail to see how any of the challenged statements exceeded the permissible scope of the prosecutor's right to comment on the plausibility of the defense theory, which rested substantially on pitting appellant's credibility against that of the testifying police officers.[7] Although we think a prosecutor

---

7. The challenged comments included the following:

The defense could have brought Cano Bufi and sat him down so Cano Bufi could have said, "No, I stole the weapons from the car. Castro Garcia and Castro Dominicci did not give them to me."
Did they bring him? No.

.     .     .     .     .

Now, ladies and gentlemen, very respectfully, if you believe that story, you believe in Santa Claus because there is no way, there is no evidence presented by them.

.     .     .     .     .

...[T]his defendant goes to Bayamon, he does not know where he is going, he does not know what the business is, he does not know

would be well advised to avoid directly accusing a defendant of lying—since jurors could believe the government has knowledge outside the evidence about the defendant's veracity—we are confident that the statements in this case would have been perceived only as commentary on the implausibility of the defendant's story. We reiterate what we stated recently in *United States v. Glantz:*

> "[D]efendant chose to call witnesses and put forth an alibi. Having done so, he had no right to expect the government to refrain from commenting on the quality of his alibi witnesses or from attacking the weak evidentiary foundation on which the alibi rested."

810 F.2d at 321 (quoting *United States v. Savarese,* 649 F.2d 83, 87 (1st Cir.1981)) (emphasis deleted). Moreover, even if the challenged statements caused some slight prejudice to appellants, we have no doubt that they did not "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Young,* 470 U.S. at 16, 105 S.Ct. at 1047.

## V. *Exclusion of the Telephone Record*

Both appellants claim the district court erred in refusing to admit into evidence a photocopy of a telephone bill that would support Castro Garcia's testimony that he called Carmen Nydia Vazquez on the morning of the alleged illegal weapons transfer. Appellants argue that the evidence was critical because it supported appellants' claim that Castro Garcia was in Puerto Rico to conduct a legal firearms transaction and because it would have impeached the credibility of Vazquez, who testified that she had not received such a call.

We have little patience with this argument because of the manner in which appellants failed to preserve it. When counsel sought to introduce the photocopy through the testimony of Castro Garcia, the prosecutor objected and the court held that appellants had failed to show that the document was prepared by the Puerto Rico Telephone Company in the regular course of business, as required under Fed.R.Evid.

803(6). Castro Garcia's lawyer stated that he agreed with the court's assessment of the business records rule, and asked whether the court would permit appellants to bring a telephone company employee to testify later that day. The court agreed. Although there was then some dialogue between appellants' counsel and the prosecutor, in which the prosecutor declined to stipulate to the authenticity of the document, the evidentiary discussion ended with the judge denying admission of the document and with the apparent understanding that appellants would produce either a telephone company witness or the telephone customer to testify. No objection to the court's ruling was ever made, and no witness was ever produced.

In these circumstances, and regardless of the technical requirements of Rule 803(6), the court did not abuse its discretion when it ruled that the document could not be admitted. *See United States v. Sorrentino,* 726 F.2d 876, 886 (1st Cir. 1984) (endorsing general rule that "a trial court's rulings on relevance and admissibility will not be disturbed unless there is abuse of discretion").

## VI. *Sufficiency of the Indictment*

Appellant Castro Dominicci claims that Count I of the indictment is legally insufficient because it failed to specify that neither Castro Garcia nor Cano Bufi had a license to carry the guns in Puerto Rico. Count I charges a violation of 18 U.S.C. § 922(b)(2), which makes it unlawful to deliver weapons to an individual for whom possession would be illegal under state law. Although the indictment specifically states that possession by Cano Bufi would violate P.R. Laws Ann.tit. 25 § 418, appellant bases his claim of insufficiency on Puerto Rico cases holding that an information charging a violation section 418 is fatally defective if it does not allege that the defendant failed to have a license to bear the weapon in question. *See, e.g., Morales Merced v. Superior Court,* 93 P.R.R. 411, 417 (1966).

Appellant's argument is unpersuasive. The indictment sufficiently informed

who he is dealing with. *He is lying to you.* (Emphasis added.)

him of the federal crime with which he was charged. *See* Fed.R.Crim.P. 7(c) (requiring that the indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged"). It identified all elements of that crime and was sufficiently specific to serve as a bar to further prosecution for the same crime. *See United States v. Debrow,* 346 U.S. 374, 376–78, 74 S.Ct. 113, 114–15, 98 L.Ed. 92 (1953). It specifically referred to the Puerto Rico statute that formed the basis for the federal violation, *cf. United States v. Cartano,* 534 F.2d 788, 791 (8th Cir.1976), and there is no requirement that the indictment include the elements of the underlying state offense. *Id.* at 791. We therefore see no reason to disturb the jury's verdict on this count.

*For the foregoing reasons, the judgments of conviction are reversed as to Count III, but affirmed as to Counts I and II. The case is remanded to the district court for reconsideration of sentencing in light of this opinion.*