UNITED STATES of America, Appellee,

v.

Gary Don JOHNSON, Appellant.

No. 77-1501.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1977.

Decided Oct. 25, 1977.

Michael Castleman, Little Rock, Ark., on brief, for appellant.

Robert L. Neighbors, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., and Sandra W. Cherry, Asst. U. S. Attys., Little Rock, Ark., on brief.

Before STEPHENSON and WEBSTER, Circuit Judges, and MARKEY,* Chief Judge.

STEPHENSON, Circuit Judge.

This case comes before us as a direct criminal appeal. Appellant Gary Don Johnson was found guilty by a jury and sentenced[1] to six years imprisonment for armed robbery of a federally insured bank in violation of 18 U.S.C. § 2113(d). On appeal, Johnson raises four issues for consideration by this court. We affirm the conviction.

On January 19, 1977, at approximately 1:40 p. m. the Bank of Pocahontas in Pocahontas, Arkansas, was robbed of $14,066 by a lone gunman who had a stocking mask over his face. Mrs. Hattie Robinson, the teller from whom the money was taken, testified that she determined that the robber was white because she saw part of his chin and that he was male by the sound of his voice.

On January 21, 1977, two FBI agents and a local police officer went to the defendant's home in Walnut Ridge, Arkansas, at approximately 4:25 p. m. The testimony of the FBI agents and local police officer shows that they informed the defendant the purpose of the visit was to investigate the robbery of the Bank of Pocahontas two days earlier, and that the defendant invited them in. Within a few minutes after their entry, the defendant signed a written consent which allowed the officers to search the house and his car. The search ended approximately 12 minutes later when the agents discovered $1,780 in $20 bills in two individual bundles in the pocket of a man's coat hanging in a closet off one of the bedrooms. At that time the defendant was placed under arrest and taken into custody.

Defendant claims that the money discovered by the agents in this search should not have been allowed into evidence at trial because the agents had not obtained a valid consent to search from the defendant. At a hearing on defendant's pretrial motion to suppress this evidence the district court found that the government had met its burden of proving by a preponderance of the evidence that the defendant's consent was knowingly and voluntarily given. *United States v. Matlock*, 415 U.S. 164, 177 n.14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Lego v. Twomey*, 404 U.S. 477, 488–89, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

In defense of his position appellant makes a two-pronged argument. First, the consent was not voluntarily given because the defendant was drunk. The evidence is uncontradicted that the defendant had at least one beer after the agents ar-

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable Terry L. Shell, United States District Judge for the Eastern District of Arkansas, presided.

rived and before the consent form was signed. The defendant's wife and one of his children testified that they believed that the defendant had been drinking earlier and was drunk. However, the defendant's wife also testified that the defendant picked her up when she got off work at 4:00 p. m. on the day of the search and that he arrived on time. She permitted the defendant to drive her to their residence which was approximately five or six miles from her place of employment. Furthermore, the FBI agents both described the defendant's speech as clear and coherent with no slurring and described his gait as steady and normal. Nor did they smell the odor of alcohol about the person of the defendant. If the trial court had found that by reason of extreme intoxication the defendant's consent was not the product of a rational intellect and a free will, then the consent would not have been valid. There was no evidence in this case which indicated that the defendant was in a condition of such extreme intoxication at the time he signed the consent. *See United States v. Leland,* 376 F.Supp. 1193, 1199 (D.Del.1974).

■ Second, the defendant asserts that the consent was not voluntary because he was coerced into signing the consent by the alleged statement of one of the FBI agents that if he did not sign the consent to search they would go get a warrant. It is implicit in the district court's conclusion that the consent was voluntarily given that it found either that such a statement had not been made (the evidence was in conflict on this point), or if it had, that such statement did not amount to coercion on the part of the agents. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1972); *United States v. Tortorello,* 533 F.2d 809, 914–15 (2d Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976); *United States v. Myers,* 378 F.2d 398, 399–400 (3d Cir. 1967). We are satisfied that the trial court's finding is amply supported by the testimony presented and was not clearly erroneous. *United States v. Frye,* 548 F.2d 765 (8th Cir. 1977). *Compare Losieau v. Sigler,* 421 F.2d 825, 827 (8th Cir. 1970). Accordingly, we affirm the

decision of the trial court which held that credible evidence had been presented which established that the defendant voluntarily and knowingly consented to the search of his residence.

After the defendant was arrested, he was taken to the county sheriff's office in Pocahontas, where he was booked. At that time $90 was taken from his billfold. This money was later introduced into evidence at trial as being part of the contraband. There were no identifying marks on the money showing that it came from the bank. The defendant argues that the $90 was discovered through an illegal search. He claims that the search was not based upon probable cause to believe that he had any money on him, was not a search incident to a lawful arrest, and was not an inventory search because coins in his pocket were not taken.

■ We need not decide this issue because we find that the admission into evidence of the $90 seized in this search, out of the total $13,871 recovered, at most rises to the level of harmless error. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 18, 17 L.Ed.2d 705 (1967). However, we do note that the recent United States Supreme Court decision of *United States v. Chadwick,* —— U.S. ——, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977), acknowledged that it is permissible to conduct a prompt warrantless search of a person as part of a custodial arrest in order to prevent evidence from being destroyed. *See also Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Such searches may be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. *United States v. Chadwick, supra,* 97 S.Ct. at 2485. We further note that in the present case the defendant still had control of the billfold and thus the danger of the defendant destroying the evidence had not passed, as was the case in *Chadwick.*

A warrant for a search of the defendant's entire residence was obtained and executed

the day after his arrest. During the search $1,100 was discovered in a chest of drawers in a back bedroom and a brown paper sack bearing a Piggly Wiggly grocery store emblem and containing $10,901 was found in a bedroom closet. Three adding machine tapes were on the money found in the Piggly Wiggly grocery sack. Both Mrs. Robinson and Mary Miller, another teller at the bank, identified the adding machine tapes as being those which were attached to some of the money taken in the robbery and stated that the money displayed to them was wrapped in the same fashion as part of the money taken in the robbery.

Appellant's next claim of error focuses upon the trial court's instruction to the jury on inferences which may be drawn from possession of recently stolen property.[2] The defendant objected to this instruction at trial on the grounds that it gave undue

weight to one piece of evidence over others because it made repeated references to "inference" and "possession of recently stolen property," that it was a proper instruction for larceny, not bank robbery, and that it did not require the jury to find that the defendant was in exclusive possession of the property.

This instruction, which was taken verbatim from *United States v. Jones,* 418 F.2d 818, 820 n. 2 (8th Cir. 1969), and substantially follows E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 15.29 (3rd ed. 1977), has been approved by this court for many years when the government has attempted to use possession of recently stolen property as a circumstance to infer participation in the theft. *United States v. Verdoorn,* 528 F.2d 103, 106–07 (8th Cir. 1976); *United States v. Sargis,* 460 F.2d 1329, 1330 (8th Cir. 1972); *United*

2. The relevant charge read as follows:

Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

And possession of property recently stolen, if not satisfactorily explained, is also ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it was stolen property, but also participated in some way in the theft of the property.

Ordinarily, the same inferences may reasonably be drawn from a false explanation of possession of recently stolen property.

Whether or not any explanation here is false is for you to determine. I am only stating what the law is.

The term "recently" is a relative term. I say "property recently stolen." Now, I am defining for you: what do you mean by "recently stolen?" The term "recently" is a relative term and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

If the jury should find beyond a reasonable doubt from the evidence in the case that the money described in the indictment was stolen and that, while recently stolen, the property

was in the possession of the accused, the jury would ordinarily be justified in drawing from those facts the inference, not only that the money was possessed by the accused with the knowledge that the property was stolen, but also that the accused participated in some way in the theft of the property, unless possession of the recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case.

In considering whether possession of recently stolen property has been satisfactorily explained, the jury will bear in mind that, in the exercise of constitutional rights, the accused need not take the witness stand and testify. Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused.

It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits the jury to draw from possession of recently stolen property.

The mere fact that I tell you that possession authorizes you to draw the inference does not mean that I am instructing you to draw the inference. All I am saying is that you may draw the inference from that possession if you find according to these instructions I have already given.

Now, if any possession the accused may have had of recently stolen property is consistent with innocence, the jury should acquit the accused.

*States v. Jones,* 418 F.2d 818, 821 (8th Cir. 1969); *Anderson v. United States,* 406 F.2d 529, 535 (8th Cir. 1969). *See also Barnes v. United States,* 412 U.S. 837, 839–40, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Thus, we find appellant's contention that this instruction is improper because it draws undue attention to and puts undue weight upon the inferences which may be drawn from possession of recently stolen property to be without merit.

■ The defendant also argues in this court that the instruction given is only proper where a defendant is accused of larceny, not bank robbery. Although most of the above cited cases involved defendants who were charged with transportation or possession of recently stolen property, rather than the actual theft, this instruction was acknowledged as appropriate in a prosecution for armed robbery in *United States v. Jones, supra.* Consequently, we also reject appellant's contention that the instruction given is inappropriate in a robbery case and that the instruction appended to *Pendergrast v. United States,* 135 U.S.App.D.C. 20, 416 F.2d 776, 790–91, *cert. denied,* 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969), is the only proper instruction on permissible inferences which may be drawn from a showing of possession of recently stolen property in an armed bank robbery case. *See United States v. McCall,* 148 U.S.App.D.C. 444, 460 F.2d 952, 958 (1972). No argument presented by the defendant convinces us that the evidence in the present case mandated that the *Pendergrast* instruction be used in lieu of an instruction of the type approved by the United States Supreme Court in *Barnes v. United States, supra,* 412 U.S. at 840, 93 S.Ct. 2357, or the instruction approved by this court in *United States v. Jones, supra,* 418 F.2d at 821.

■ In *Jones,* the defendant's conviction was overturned on appeal because there were no other facts or circumstances in addition to possession of recently stolen property linking the defendant to the robbery. In the present case the government presented evidence in corroboration of the

inference that because the defendant was found in possession of property recently stolen from the bank that he participated in the theft. Specifically, the evidence showed that: (1) the bank was robbed by a lone white male gunman who was approximately five feet eight inches tall and had a small build; (2) the defendant possessed virtually the entire amount of money taken from the bank three days after the robbery; (3) the defendant was seen by his brother driving away from Pocahontas, where the robbery took place, toward Walnut Ridge, the defendant's home, a few·minutes after the robbery, in an auto loaned to defendant by his brother; (4) the defendant was unemployed at the time of the robbery; (5) shortly before the robbery an automobile purchased by the defendant had been returned to the seller for lack of payments and he had other outstanding debts; (6) the defendant's hair was messed up when he was seen leaving Pocahontas, from which the jury could conclude that he had removed a stocking mask; (7) $10,901 of the bank money was found in a Piggly Wiggly sack in the defendant's closet, it having been established that the robber had the teller place the money in a Piggly Wiggly sack; (8) other Piggly Wiggly sacks were found in the defendant's kitchen; (9) there was testimony that there was no Piggly Wiggly store in Pocahontas where the robbery took place, but there was such a store in Walnut Ridge, the home of the defendant. When viewed in a light most favorable to the government as the prevailing party these additional circumstances provide sufficient evidence to support the conviction.

■ In the instruction which was given by the court there was no indication that the jury had to find the recently stolen property was in the defendant's *exclusive* possession in order for the possession to give rise to the inferences that the defendant knew it was stolen and that he participated in the theft. In light of the facts and circumstances of this case we do not find this omission to be error. Exclusive possession does not necessarily mean possession to

the exclusion of all other persons; it means merely that the accused must bear some distinctive relationship to the property before the inference of guilt may be drawn. *United States v. Fench*, 152 U.S.App.D.C. 325, 470 F.2d 1234, 1243 n. 19 (1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); *United States v. Johnson*, 140 U.S.App.D.C. 54, 433 F.2d 1160, 1164–65 (1970). In the instant case there can be no doubt the defendant had exclusive possession of the stolen property. It was found in the home occupied only by the appellant, his wife and their minor children. There was no evidence or testimony which would indicate that sums of money were brought into the house by any other person between the bank robbery and the searches and seizures conducted.

■ The defendant also relies on *United States v. Jenkins,* 496 F.2d 57 (2d Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975), for the proposition that the jury may be instructed on the inferences arising from the showing of possession of recently stolen property only if the jury is also told that such possession is not in and of itself sufficient to support a conviction for robbery. As in that case, any possibility that the jury may have been confused by some of the language in the instruction viewed in isolation is vitiated by other language in the contested instruction and other instructions given by the court. Here the instruction objected to stated that the jury may draw the inference in light of the surrounding circumstances shown by the evidence in the case and that it is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference. Furthermore, the jury was properly instructed on the presumption of innocence accorded a defendant and the burden resting on the government to establish guilt beyond a reasonable doubt on every essential element of the crime charged. *See United States v. Verdoorn,* 528 F.2d 103 (8th Cir. 1976).

Appellant's final appeal point is that the trial court erred in not granting his request for a mistrial due to a statement made by the prosecuting attorney in the rebuttal segment of his closing argument. The United States Attorney made the statement "There was one thing I kept listening for was an explanation of where the money came from. We submit to you that it came from the Bank of Pocahontas. I don't think there's any question that that's where it came from." At this point defendant's attorney objected that the United States Attorney had made an improper argument by commenting on the defendant's failure to testify and moved for a mistrial. This motion was denied but the trial judge immediately admonished the jury that a defendant in a criminal case is not compelled to testify and has no burden of calling any witnesses or producing any evidence, and no presumption of guilt nor any inference of any kind can be drawn from the fact that the defendant did not testify, and that the arguments of counsel are not evidence in the case.

■ The statement of the prosecutor, when read in context, could have referred to the defense counsel's failure during his closing argument to directly refute the government's contention that the money found in the defendant's residence was stolen from the Bank of Pocahontas, or it could have referred to the lack of testimony from witnesses other than the defendant. *See United States v. Bishop*, 534 F.2d 214, 219–20 (10th Cir. 1976); *United States v. Jennings*, 527 F.2d 862, 871 (5th Cir. 1976). The language used was not manifestly intended or "of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Brown*, 546 F.2d 166, 173 (5th Cir. 1977); *United States v. Williams*, 503 F.2d 480, 485 (8th Cir. 1974). Moreover, any possibility that the statement could have been considered as a comment on the defendant's failure to testify was rendered harmless by the trial court's prompt statement to the jury. *United States v. Biondo*, 483 F.2d 635, 644–45 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); *United*

States v. Bursten, 453 F.2d 605, 611 (5th Cir. 1971), cert. denied, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972); Desmond v. United States, 345 F.2d 225, 226–27 (1st Cir. 1965).

We conclude from our review of this record that the evidence of guilt is strong and the conviction should be affirmed.