**UNITED STATES of America, Appellee,**

v.

**Walter Howard WELLS, Appellant.**

No. 82–2348.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 21, 1983.

Decided March 14, 1983.

142

Thomas E. Dittmeier, U.S. Atty., Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Kurt D. Breeze, Diekemper, Hammond & Shinners, St. Louis, Mo., for appellant Walter Howard Wells.

Before BRIGHT, ROSS and JOHN R. GIBSON, Circuit Judges.

BRIGHT, Circuit Judge.

Walter Howard Wells appeals from his conviction by a jury of one count of possessing an illegal firearm in violation of 26 U.S.C. § 5861(d) and one count of possessing, in commerce, a firearm, in violation of 18 U.S.C.App. § 1202(a)(1). The district court [1] sentenced Wells to five years' imprisonment on the first count and two years on the second count, with the sentences to run concurrently. We affirm.

I. *Background.*

On July 2, 1981, Walter Howard Wells entered the Nut House Tavern, in St. Louis, Missouri, accompanied by Linda Sue Pruitt (a friend), Kelly B. Allert (Wells' niece), and Wells' four-year-old son. Wells carried a paper bag into the tavern and placed it on the floor next to his chair. Approximately thirty-five to forty minutes later, an unidentified man stopped a police cruiser patrolling the tavern area. The man told the officers that he had been telephoned by the barmaid at the tavern, Barbara Mayes, and had been advised that a man with a gun was in the tavern. Mayes informed the officers upon their arrival outside the tavern that she had telephoned the man who had stopped the police. Mayes told the police that there was a man in the tavern with a gun in a paper bag. The officers

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

then entered the tavern and saw Wells getting up from his table. The officers also observed a paper bag on the floor near Wells' right leg. Officer Strinni picked up the paper bag and removed from it a sawed-off .22 caliber rifle. Strinni asked Wells whether the bag was his. Wells replied, "No, it's not. I didn't even know it was there." Strinni then unloaded one live round of ammunition from the rifle and placed Wells under arrest. The officer read Wells his rights and proceeded to search him. The police removed eleven live rounds of .22 caliber ammunition from Wells' front trouser pocket.

The Government filed its indictment of Wells on August 20, 1982. At trial, Wells denied owning the bag Officer Strinni removed. Wells testified that both Pruitt and his niece had carried bags into the tavern. Wells also testified that the ammunition in his pocket had been acquired for Barbara Foster, his ex-commonlaw wife, and that she had entered the tavern fifteen to twenty minutes after his arrival. Wells further testified that while he had carried a bag into the tavern, that bag contained a bottle of whiskey which Wells placed in the restroom. Wells maintained that he had requested Officer Strinni to search the restroom.

The Government introduced testimony from Pruitt, who claimed that neither she nor the niece carried anything into the tavern. Foster testified that she had been in Sikeston, Missouri, on the day in question, not in the tavern. Officer Strinni testified that Wells never mentioned a whiskey bottle nor requested the police to search the restroom.

On October 8, 1982, the jury returned a verdict of guilty. On October 29, 1982, the trial court imposed sentence. Wells' motion for a new trial was denied. On appeal, Wells argues that (1) preindictment delay deprived him of due process, (2) the trial court erred in giving certain instructions, and (3) the trial court erred in overruling his motion to suppress certain evidence.

## II. *Discussion.*

### A. *Preindictment Delay.*

Wells contends that the delay of thirteen and one-half months between his criminal act and his indictment denied him due process and should have resulted in the dismissal of the indictment. An indictment may be dismissed for preindictment delay if it appears that the delay was unreasonable and that it was prejudicial to the defendant in the presentation of his case. *United States v. Lovasco,* 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Rodgers,* 639 F.2d 438, 440 (8th Cir.1981). Our review of the record in this case reveals neither unreasonable delay nor the existence of prejudice. We note initially that a thirteen and one-half month period is not *per se* excessive. The due process clause does not permit us to abort criminal prosecutions simply because we may not agree with the prosecutor's judgment as to when to seek an indictment. *United States v. Lovasco, supra,* 431 U.S. at 790, 97 S.Ct. at 2048; *United States v. Singer,* 687 F.2d 1135, 1144 (8th Cir.1982). In addition, Wells has failed to demonstrate that the Government intentionally delayed seeking an indictment in order to gain a technical advantage. *United States v. Boles,* 684 F.2d 534, 536 (8th Cir.1982). Consequently, we cannot find the delay unreasonable. Moreover, Wells has failed to demonstrate any prejudice. Wells asserts that the delay resulted in the destruction of certain municipal records allegedly containing an exculpatory statement made by Foster. This claim is unpersuasive because Wells failed to ask Foster at trial if, in fact, she had ever made such statements.

Accordingly, we reject Wells' contentions that preindictment delay denied him due process.

### B. *Jury Instructions.*

Wells argues that the trial court erred in giving Instruction No. 10, "Excul-

patory Statements—Later Shown False."[2] We disagree. This instruction is properly given when a defendant, as in this case, offers an exculpatory explanation which is later proven to be false. Here, when confronted by Officer Strinni as to whether the paper bag was his, Wells replied, "No, it's not. I didn't even know it was there." Wells repeated these remarks at trial. Subsequent testimony at trial, however, suggested this statement to be false.

■ Wells contends that this instruction unfairly penalizes the criminal defendant who, upon confrontation, denies the crime, rather than remain silent. This contention lacks merit. *See United States v. Turner,* 551 F.2d 780, 783 (8th Cir.), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 262 (1977).

■ Wells next argues that the trial court erred in giving Instruction Nos. 15 and 20,[3] because the Government failed to present any evidence from which the jury could have determined that Wells "knowingly" possessed the firearm in question. We disagree. Our examination of the record reveals that the jury could have concluded from the facts, and the inferences drawn from them, that Wells "knowingly" possessed a firearm.

### C. *Suppression of Evidence.*

Wells contends that the trial court erred in admitting the firearm and ammunition into evidence. Wells observes that this evidence was seized without a warrant, and asserts that the Government failed to prove probable cause and exigent circumstances. We disagree.

■ The record demonstrates that the police at least possessed a reasonable suspicion that Wells was in possession of a firearm. The officers knew from Mayes that the gun was in the paper bag on the floor and that there were other persons in the tavern. Given these facts, exigent circumstances existed justifying Officer Strinni's seizure of the paper bag and the firearm in it so as to insure the safety of himself and the other individuals present in the tavern. *See United States v. Allison,* 639 F.2d 792, 793–94 (D.C.Cir.1980). Thus the trial court properly admitted the firearm into evidence.

**2.** Instruction No. 10 provides in pertinent part:

When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt. Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.

**3.** GOVERNMENT'S INSTRUCTION NO. 15:

As to Count I:

In order to sustain a prosecution under Section 5861(d), Title 26, United States Code, the Government must prove beyond a reasonable doubt the following two essential elements:

First: That the defendant, at the time and place charged in the indictment, knowingly possessed a rifle with a barrel less than 16 inches in length; and

Second: That the rifle was not then registered to the defendant in the National Firearms Register and Transfer Record.

The burden is always on the prosecution to establish each of these elements by proof beyond a reasonable doubt. The law never imposes on the deft. [defendant] in a criminal case the burden of introducing any evidence or calling any witnesses.

GOVERNMENT'S INSTRUCTION NO. 20:

As to Count II:

In order to sustain a prosecution under Section 1202(a)(1) Title 18 Appendix USC, the Govt [Government] must prove beyond a reasonable doubt the following 3 essential elements

First: That the defendant was convicted of a felony under the laws of the United States.

Second: That thereafter he knowingly possessed a firearm;

Third: That his possession of the firearm was in or affecting commerce.

The burden is always on the prosecution to establish each of these elements by proof beyond a reasonable doubt. The law never imposes on the defendant in a criminal case the burden of introducing any evidence or calling any witnesses.

The lawful arrest of an individual establishes authority to conduct a search. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Whether probable cause for an arrest exists depends on the cumulative facts viewed by a reasonably prudent police officer. *United States v. Regan,* 525 F.2d 1151, 1155 (8th Cir.1975). We hold that under the circumstances of this case, the police had ample probable cause to arrest Wells. Accordingly, the subsequent pat-down search of Wells, which produced eleven live rounds of ammunition, was a search pursuant to a lawful arrest. The evidence was admissible.

Finding no prejudicial error, we affirm.