UNITED STATES of America, Appellee,

v.

**Jacob M. PENN, Appellant.**

**No. 91–3422.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1992.

Decided Sept. 10, 1992.

Mark Bubak, Omaha, Neb., for appellant.

* The HONORABLE JOHN W. PECK, Senior United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

Michael Norris, Omaha, Neb., for appellee.

Before JOHN R. GIBSON, Circuit Judge, PECK,* Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Appellant Jacob Penn appeals from a guilty verdict in the district court[1] on one count of possession of marijuana with intent to distribute. For the reasons stated below, we affirm.

## FACTS

On December 4, 1989, Curtis Blackbird found a gray duffel bag containing several bags of marijuana in an inoperable freezer which was used for dry storage at the halfway house on the Omaha Indian Reservation in Macy, Nebraska. When he discovered the bag, Blackbird was accompanied by another resident of the halfway house. Later, however, Blackbird could not recall who was with him. Blackbird reported his discovery to the police. The police analysis of the bag revealed a total of 298.24 grams of marijuana packaged in several parcels, two pipes, two metal fittings, one metal piece, and some articles of clothing.

The same day Blackbird found the marijuana, FBI Special Agent Crum interviewed four of the five residents of the halfway house, including Appellant Penn. Crum testified at trial that during the initial interview Penn denied ownership of the duffel bag, but stated that he had seen the bag or one like it in a field by the powwow grounds. Crum also testified that Penn had told him he was with Blackbird when the duffel bag was discovered. In his trial testimony, Penn denied being with Blackbird and stated that he was attending college classes at the time the bag was found.

On November 8, 1990, Crum again interviewed Penn. At that time, Penn admitted that the duffel bag and the pipes and cloth-

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

ing in it belonged to him. However, Penn denied ownership of the marijuana. At trial, Crum testified that Penn admitted his prior statement regarding ownership of the duffel bag was false. Crum also testified that Penn admitted being an avid user of marijuana and that Penn had expounded upon harvesting methods which maximize the level of THC, the active ingredient in marijuana. Additionally, Crum testified that Penn conceded that he could have grown the marijuana in the bag, but he couldn't remember due to drug-related memory loss.

On January 16, 1991, Penn was indicted for possession of marijuana with intent to distribute in violation of 21 U.S.C. 841(a)(1). Penn pled not guilty and proceeded to trial in June 1991. The jury returned a guilty verdict. Penn made motions for judgment of acquittal and new trial which were denied. The presentence report recommended a sentencing enhancement of two levels for obstruction of justice due to Penn's false statement about the ownership of the duffel bag at his first interview with the FBI agent. Penn objected to the enhancement. A hearing was held and Penn's objection was overruled. Penn was sentenced to twelve months in prison and three years' supervised release. This appeal followed.

### ANALYSIS

Denial of motion for judgment of acquittal

■ Penn filed a post-trial motion for a judgment of acquittal which was denied. He now argues that he is entitled to acquittal as a matter of law because the Government's evidence was insufficient to sustain the verdict. Penn notes that the marijuana was found in a storage compartment in the kitchen of the halfway house that was accessible to all the residents of the house as well as any visitors. He argues that anyone could have taken his duffel bag, put the marijuana in it, and then placed it in the storage compartment. Penn notes that there was no testimony establishing that he ever possessed the marijuana. Penn concludes that the Government presented only

circumstantial evidence and that it is insufficient to sustain the guilty verdict.

Because a post-verdict motion for judgment of acquittal puts in issue the sufficiency of the evidence to sustain the verdict, it is reviewed under the familiar standards for an appeal of a conviction on the grounds of insufficiency of the evidence:

[The reviewing court] is required to view the evidence in the light most favorable to the verdict, giving the prosecution the benefit of all inferences reasonably to be drawn in its favor from the evidence. The verdict may be based in whole or in part on circumstantial evidence. The evidence need not exclude every reasonable hypothesis except that of guilt; it is sufficient if there is substantial evidence justifying an inference of guilt as found irrespective of any countervailing testimony that may have been introduced. If so, the issue of guilt or innocence has been properly submitted to the jury for its determination, and the motion for judgment of acquittal is properly denied.

*United States v. Lincoln,* 630 F.2d 1313, 1316–17 (8th Cir.1980) (citations omitted). Furthermore, the jury's verdict will only be overturned if the evidence is such that a reasonable juror *must* have a reasonable doubt regarding the existence of one of the essential elements of the crime. *Rothgeb v. United States,* 789 F.2d 647, 648 (8th Cir.1986).

■ In this case, Penn eventually admitted that the duffel bag and the pipes and clothing inside of it belonged to him. While he denied ownership of the marijuana, Agent Crum testified that Penn conceded that he could have grown it, but couldn't remember. Furthermore, the jury could consider Penn's initial denial of ownership of the duffel bag which proved to be false. False exculpatory statements are admissible as substantive evidence tending to show guilt. *United States v. Hudson,* 717 F.2d 1211, 1215 (8th Cir.1983). Additionally, the Government presented evidence that the marijuana was for distribution. A narcotics officer testified that 298 grams of marijuana was an amount greater than that usually associated with personal

use. Furthermore, the marijuana was packaged in several parcels which is also indicative of distribution. While the evidence of guilt is not overwhelming, we conclude that "there is substantial evidence justifying an inference of guilt as found irrespective of [Penn's] countervailing testimony." *Lincoln*, 630 F.2d at 1316–17. Accordingly, the district court correctly denied Penn's motion for judgment of acquittal.

Jury instruction

◼ Next, Penn argues that the trial court erred in giving the jury an instruction on false exculpatory statements. Jury Instruction No. 11 provided:

When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, you may consider whether this evidence points to a consciousness of guilt. The significance to be attached to any such evidence is a matter for you to determine.

Penn complains there was no evidentiary base for this instruction and that the Government failed to prove that his initial statement to the FBI agent denying ownership of the duffel bag was false or intentional. Penn submits that the duffel bag was not shown to him at the first interview and that it was only at the second interview when he was presented with a picture that he recognized the duffel bag as belonging to him. Although Agent Crum testified to the contrary, Penn denied that he had told Crum that his first statement was untrue. Because the prosecution relied heavily on Agent Crum's testimony about Penn's statements, Penn submits that he was prejudiced by the instruction and is entitled to a new trial.

◼ We cannot agree. A false exculpatory statement instruction is properly given when the defendant's exculpatory explanation is later proven to be false. *United States v. Wells*, 702 F.2d 141, 144 (8th Cir.1983). In this case, Penn gave the FBI agent conflicting statements regarding ownership of the duffel bag and its con-

tents. There was also testimony from Agent Crum that Penn had subsequently admitted that his initial statement was false. Thus, there was an evidentiary base for the instruction. Penn's denial that he told Crum his first statement was false does not make a false exculpatory instruction improper. *See id.* at 144 (false exculpatory instruction proper where other testimony suggested that defendant's statement was false even though defendant denied its falsity). Questions regarding the credibility of witnesses and the weight to be given their testimony are for the jury to decide, not the reviewing court. *United States v. Wilkerson*, 691 F.2d 425, 427 (8th Cir.1982). Accordingly, we conclude that the evidence supported the false exculpatory statement instruction and the district court correctly instructed the jury.

Sentencing

◼ Section 3C1.1 of the Sentencing Guidelines provides for a two level enhancement if the defendant willfully obstructed or impeded, or attempted to obstruct or impede justice during the investigation or prosecution of the offense. Application Note 3(g) specifies that the enhancement may be applied when the defendant gives a materially false statement to a law enforcement officer that significantly obstructed or impeded the investigation or prosecution of the offense.

The district court applied this enhancement because it found that Penn's initial denial of ownership of the duffel bag constituted a materially false statement to a law enforcement officer that significantly obstructed or impeded justice. Penn argues that this enhancement is error because he admitted that the duffel bag belonged to him in November 1990 and the investigation continued until January 1991. Therefore, Penn concludes that any statement he made could not have significantly impeded the investigation or prosecution.

A district court's finding of fact with regard to sentencing is reviewed under the clearly erroneous standard. *United States v. Williams*, 879 F.2d 454, 457 (8th Cir. 1989). In this case, Penn did not admit

that the duffel bag belonged to him until after an FBI polygraphist had been flown in to administer a polygraph. Thus, Penn's initial false statement necessitated a second interview with additional special personnel. The delay and expense occasioned by this second interview demonstrates that Penn's actions obstructed and impeded the investigation. Thus, the district court's finding is not clearly erroneous. Accordingly, Penn's sentence is affirmed.