**UNITED STATES of America, Appellee,**

v.

**Jimmie D. BEARD, Appellant.**

**No. 92–3344.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1993.

Decided June 24, 1993.

---

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Jimmie D. Beard appeals from his conviction of making false statements to a financial institution in violation of 18 U.S.C. § 1014 (Supp. III 1991). Beard argues that there was insufficient evidence for conviction and that the district court[1] erred in denying his motion for acquittal. We affirm.

Beard leased and managed the Superior Livestock Commission Company Auction Barn in Superior, Nebraska from 1987 until 1989. The auction barn ordinarily sold cattle brought to the barn, but also occasionally purchased cattle. In addition, Beard himself frequently bought and sold cattle. Beginning in 1987, Beard began to borrow money from the Commercial Bank of Nelson and, in doing so, submitted various financial statements. This prosecution involved three such statements: one dated December 4, 1987, another December 28, 1988, and a third June 14, 1989.

The grand jury indicted Beard on three counts of making false financial statements to the Commercial Bank of Nelson in violation of 18 U.S.C. § 1014, one count of mail fraud, and one count of transporting stolen property in interstate commerce. At trial, the jury convicted only on Count II, based on the December 28, 1988 financial statement to the Commercial Bank, and acquitted on all other charges.

In his brief, Beard embarks on an extensive exploration of the various transactions, but we limit our discussion to the single Count II transaction, the furnishing of the December 28, 1988 false financial statement to the bank. The government claims the December 28 statement falsely recited that Beard's assets included $782,582 in cattle and 320 acres of land worth $144,000.

Beard argues that there was insufficient evidence to establish that the December 28 statement was false. He also argues that it was irrational for the jury to convict him on

Lyle Joseph Koenig, Hebron, NE, for appellant.

Ellyn J. Grant, Omaha, NE (Ronald D. Lahners and Ellyn J. Grant, on brief), for appellee.

---

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

Count II after acquitting him on Counts I and III, which also alleged false statements to the Commercial Bank.

When reviewing for sufficiency of evidence, "we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." *United States v. Plenty Arrows*, 946 F.2d 62, 64 (8th Cir.1991); *see also Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We uphold the verdict if there is substantial evidence to justify an inference of guilt and overturn only if the evidence is such that "a reasonable juror *must* have a reasonable doubt regarding the existence of one of the essential elements of the crime." *United States v. Penn*, 974 F.2d 1026, 1028 (8th Cir.1992).

■ On December 30, 1988, Beard submitted to the Commercial Bank a standard form, "Condensed Financial Statement for Stockman or Farmer," which listed Beard's assets and liabilities as of December 28, 1988. Among his assets, Beard listed some 1,436 head of cattle worth a total of $782,588.[2] These assets were collateral securing Commercial Bank's $372,000 loan to Beard. Beard signed the statement, certifying that it represented his "true financial condition" as of December 28, 1988.

At trial, the government introduced Beard's 1988 federal income tax return. On Schedule C of that return, Beard stated that he had $17,800 worth of livestock inventory at the end of 1988. There was testimony at trial that this would be approximately thirty head of cattle. Beard continues to maintain that both the December 28 statement and his 1988 income tax returns are correct.[3] Beard claims to have had 1,436 head of cattle on December 28, 1988, and only about thirty head of cattle on December 31, 1988. In other words, Beard claims that he sold approximately 1,400 cattle in about four days. Beard argued this to the jury, but the jury, apparently, chose not to believe him.

At trial, Beard introduced numerous witnesses who testified that Beard constantly bought and sold large numbers of cattle, and that the number of cattle in Beard's possession varied from day to day. The witnesses included Beard's employees, people who had bought or sold cattle through Beard's auction barn, owners of property on which Beard's cattle were fed or temporarily stored, and people who regularly transported cattle for Beard. All of this testimony was of a general nature, referring to the entire period during which Beard managed the auction barn. There is no testimony in the record specifically relating to the number of cattle in Beard's possession between December 28 and December 31, 1988. In fact, Beard could only document one sale of cattle at the barn between December 28 and December 31. This was a sale of 344 head by "J.D. Cattle," a company name under which Beard did business. Although Beard points to evidence of a number of cattle sales, he does not cite any testimony specifically establishing that he possessed 1,436 head on December 28 or that he sold some 1,400 head between that date and December 31. In addition, Beard's 1988 tax returns reported that he spent $13,145 on feed for cattle for the entire year of 1988, and there was testimony that this was sufficient to feed 1,400 head for only about twelve days.

The government also introduced evidence that Beard arranged sham transactions. For example, Beard claimed to have personally sold cattle at the barn to one Ron Gadbury at a time when Gadbury was actually in a hospital in Kansas. On another occasion, Beard recorded sales to a "Golden Belt Cattle Company." At trial, the owner of Golden Belt denied buying any cattle from Beard. The government also presented evidence that Beard, despite his heavy debts to the Commercial Bank, had engaged in commodities speculation and had lost $75,000 during 1988.

2. Beard described the cattle as fifty-six cows (worth $39,200), seven "cows and calves" (worth $5,600), eighty-seven "heifers and steers" (worth $43,027), 177 heifers (worth $106,200), 246 steers two years old (worth $161,376) and 863 "steer calves" (worth $427,185).

3. Beard did suggest that his wife submitted the wrong end-of-year inventory figure to their tax preparer.

Finally, the jury saw a letter that Beard wrote to Lee Clabaugh at the Commercial Bank on July 31, 1989. Beard wrote to persuade Clabaugh to continue extending credit to Beard. In the letter, Beard acknowledged that he had a "serious problem" with the outstanding loans and stated "[a]s for collateral there isn't any and never was any." Beard suggested that it would be better for Clabaugh to "keep this thing under wraps" rather than "turn this over to the law."

■ Beard also disputed that he had falsely claimed to own 320 acres of land on December 28. Beard's mother testified that Beard had purchased the land at an auction after her husband's death. Beard later deeded the land back to his mother with the agreement that, upon her death, the land would belong to Beard and his sister. Lee Clabaugh, Beard's banker at the Commercial Bank, testified that Beard had told him that Beard "was buying" the land from his mother. Clabaugh prepared the December 28 financial statement which listed the land among Beard's assets. Beard, however, signed the statement which clearly named him as the owner of the land.

While there was conflicting evidence for the jury to resolve, it was not such that reasonable jurors must have had a doubt as to guilt. We conclude, considering all of this evidence in a light most favorable to the verdict and giving the government the benefit of all reasonable inferences, that there was sufficient evidence for the jury to convict Beard of making false statements to the Commercial Bank in his December 28, 1988 financial statement.

■ Finally, we find no merit in Beard's argument that it was "irrational" for the jury to convict him on Count II after they had acquitted him on Counts I and III, which Beard argues are "identical" charges supported by the same evidence as Count II. The other charges were not "identical." Count II was based on the December 28, 1988 financial statement. Count I charged false statements in a December 4, 1987 financial statement, and Count III alleged a false statement in a June 14, 1989 financial statement. The evidence underlying each of the three counts was different and the jury's verdicts were not inconsistent. *See United States v. Martin*, 933 F.2d 609, 611–12 (8th Cir.1991).

We affirm Beard's conviction.