UNITED STATES of America, Plaintiff–Appellee,

v.

Richard CLARK, III, Defendant–Appellant.

No. 94–1267.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 9, 1994.

Decided Jan. 30, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 10, 1995.

Robert D. Richman, Minneapolis, MN, argued, for appellant.

Jon M. Hopeman, Minneapolis, MN, argued (David L. Lillehaug and James E. Lackner, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Richard Clark appeals his conviction for carjacking and for using a firearm while committing a crime of violence. He argues that the district court[1] erred in instructing the jury that it could draw three permissive inferences from the evidence, and in departing upward because of Clark's extreme conduct. We affirm.

## I. The Jury Instruction Issues

On the night of June 27, 1993, two armed carjackers wearing bandannas over their faces ordered Warren Roehl out of the driver's seat and into the back seat of his car, which was stopped at a Minneapolis intersection. One assailant, Troy Evans, got in the back seat with Roehl, pointed a shotgun at him, and demanded money. The other assailant, armed with a revolver, began to drive the car. After Roehl surrendered his money, the carjackers ordered him out of the car and drove away. Roehl telephoned the police and gave them a description of the car and the carjackers.

Approximately twenty-five minutes later, two police officers saw Roehl's car and began to follow. The driver accelerated and a high-speed chase ensued on residential city streets. The car ran a red light and a stop sign, went out of control, and crashed into a pole. Police arrested the driver, Clark, and the passenger, Evans. Clark, wearing Roehl's leather jacket, struggled and gave police a false name; several of Roehl's blank checkbooks and currency in the amounts stolen were found in his pockets. Police also found a bandanna and a duffel bag containing a revolver, a shotgun, and another bandanna. When Roehl arrived, he identified Evans but could not positively identify Clark.

At Clark's trial, Evans identified Clark as the second carjacker, and Roehl testified that Clark is similar in height, build, and voice to the second assailant. Clark testified that, after drinking heavily that night, he was on his way to visit a friend when a stranger offered him the leather jacket if he would drive the car across town. Evans went along and gave Clark the blank checks as he was driving. Clark explained that he panicked and fled when the police began to follow because there were guns in the car, he was driving with a suspended license, and he feared the car was stolen. In rebuttal, an FBI agent testified that Clark gave conflicting statements when interviewed after the crime.

At the conclusion of the evidence, the district court gave the following instructions over Clark's timely objections:

When a defendant voluntarily and intentionally offers an explanation, or makes some statement which tends to show his innocence, and if you find that explanation or that statement is false, well, you might consider whether that proves or points to a consciousness of guilt. The significance to be attached to any such evidence is of course a matter for you to determine.

\* \* \* \* \* \*

Possession of property recently stolen, if not satisfactorily explained, is a circumstance from which a jury may infer that the person in possession of it not only knew that the property was stolen, but also participated in the theft in some way.... You are never required to make this inference. You are the sole judges of the facts of the case, and you must determine, or decide whether the facts and circumstances shown by the evidence in this case warrant any inference which the law

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

would permit a jury to draw from the possession of recently stolen property.

You may also consider any evidence of flight by the defendant, along with all of the evidence in the case, and you may consider whether this evidence shows a consciousness of guilt and determine the significance to be attached to any such conduct.

You are reminded, however, always, that the burden lies upon the government to prove beyond a reasonable doubt every essential element of the offense before a defendant could be found guilty of a crime. The law never imposes on a defendant in a criminal case either the burden or the duty of calling any witnesses or producing any evidence.

The jury found Clark guilty of carjacking in violation of 18 U.S.C. § 2119 and of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). On appeal, Clark contends that the district court erred by permitting the jury to infer that he participated in the theft from his possession of recently stolen property, and to infer consciousness of guilt from his false exculpatory statements and his flight from police.

"Inferences and presumptions are a staple of our adversary system of factfinding." *County Court of Ulster County v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). In this case, Clark challenges permissive inferences, those which allow, but do not require, the jury to infer one fact from proof of another. Clark argues that these instructions violated his Fifth Amendment right to due process because they "tended to undermine the requirement of proof beyond a reasonable doubt." However, "[a] permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Francis v. Franklin,* 471 U.S. 307, 314–15, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985). Reason and common sense justify these well-established inferences in this case.

■ In *Barnes v. United States,* 412 U.S. 837, 843–46, 93 S.Ct. 2357, 2361–63, 37 L.Ed.2d 380 (1973), the Supreme Court upheld an instruction permitting the jury to infer from unexplained possession of recently stolen property knowledge that the property was stolen. Clark argues that the district court erred in also permitting the jury to infer participation in the theft from possession of recently stolen property. This contention is without merit. We expressly approved an instruction containing this additional inference in *United States v. Johnson,* 563 F.2d 936, 940–41 (8th Cir.1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 746, 54 L.Ed.2d 768 (1978). We have repeatedly cited *Johnson* in holding that possession of recently stolen property is evidence of participation in a theft. *See United States v. Hankins,* 931 F.2d 1256, 1259 (8th Cir.), *cert. denied,* 502 U.S. 886, 112 S.Ct. 243, 116 L.Ed.2d 198 (1991); *United States v. Nabors,* 762 F.2d 642, 653 (8th Cir.1985). Of course, the district court must ensure that the evidence warrants permitting the jury to draw an inference. *See United States v. Weis,* 675 F.2d 217, 218 (8th Cir.1982). On the facts of this case, an instruction permitting this inference was well within the district court's discretion.

■ Clark next challenges two "consciousness of guilt" instructions—a false exculpatory statement instruction based upon § 4.15 of the Eighth Circuit Model Criminal Jury Instructions, and an instruction that flight may evidence a consciousness of guilt. "It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 John H. Wigmore, *Evidence* § 276, at 122 (James H. Chadbourn rev. 1979). There is debate whether these inferences should be included in jury instructions, or relegated to the give and take of counsel argument. *See United States v. McQuarry,* 726 F.2d 401, 403 (8th Cir.1984) (McMillian, J., concurring). But we have squarely held that these instructions may be given when warranted by the evidence. *See United States v. Penn,* 974 F.2d 1026, 1029 (8th Cir.1992) (false exculpatory statement); *United States v. Roy,* 843 F.2d 305, 310–11 (8th Cir.), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2881, 101 L.Ed.2d 916 (1988) (flight).

The government's case included evidence that Clark gave false exculpatory statements to investigators following his arrest. Clark also testified at trial, and the jury obviously did not believe him. The false exculpatory statement instruction is aimed at pretrial fabrications, on the theory that the innocent do not fabricate to avoid being accused of crime. *See, e.g., United States v. Wells,* 702 F.2d 141, 144 (8th Cir.1983). That theory does not apply to a defendant's trial testimony. While adverse inferences will inevitably be drawn from disbelief of a defendant's trial testimony, this instruction is not appropriate every time the government casts doubt on a defendant's testimony. Thus, we are somewhat concerned that the district court's instruction was not clearly limited to Clark's pretrial false exculpatory statements. However, Clark did not raise this issue, and the court instructed the jury that his trial testimony should be judged in the same fashion as that of other witnesses, so there was at most harmless error. *See Wilson v. United States,* 162 U.S. 613, 621, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896).

A flight instruction is proper when, as here, the flight occurred immediately after commission of the crime in question. *See United States v. White,* 488 F.2d 660, 662 (8th Cir.1973). Clark argues that it is improper to infer consciousness of guilt of carjacking when he had so many other reasons to flee—there were guns in the car, he had possession of Roehl's checkbooks, his driver's license was invalid, and he suspected the car was stolen. The district court properly left that issue for the jury. The existence of other possible reasons for flight does not render the inference impermissible or irrational. *See Roy,* 843 F.2d at 310.

Each of the three challenged instructions was clearly phrased as a permissive inference, and the jury was told that it could

reject each inference. The instructions also emphasized the government's burden to prove every element of the crime beyond a reasonable doubt. Viewing the instructions as a whole, as we must, we conclude that the district court did not abuse its discretion in giving these instructions. *See Hankins,* 931 F.2d at 1262–63.

## II. The Sentencing Issue

Clark contends that the district court erred in imposing a twenty-four month upward departure. Clark's presentence report, applying the November 1, 1992 Guidelines, recommended an offense level of twenty-eight for the carjacking—a base level of twenty under U.S.S.G. § 2B3.1, plus increases of four levels because a person was abducted, U.S.S.G. § 2B3.1(b)(4); two levels for obstruction of justice, U.S.S.G. § 3C1.1; and two levels because Clark recklessly endangered other people's lives when he fled, U.S.S.G. § 3C1.2. The district court rejected the increase for reckless endangerment and reduced Clark's criminal history category from III to II because category III overstated his criminal history. *See* U.S.S.G. § 4A1.3. This produced a Guidelines sentencing range of 70 to 87 months for the carjacking.[2] The court sentenced Clark to 160 months—seventy-six months for the carjacking, a twenty-four month upward departure, and a consecutive sixty months for the firearm violation.

The court explained in its judgment that it departed upward

> because of defendant's callous treatment of the victim. The defendant degraded and terrorized the victim during the commission of the offense, and, in this Court's view, such actions constitute the type of

---

**2.** This appears to be too low. There is a six-level increase for use of a firearm in a carjacking, which would produce a Guidelines range of 135–168 months. *See* U.S.S.G. § 2B3.1(b)(2). The PSR instead applied the 60–month mandatory consecutive firearm sentence prescribed by 18 U.S.C. § 924(c). However, under the proviso to § 2K2.4, comment. (n. 2), of the 1992 Guidelines, Clark's Guidelines range should have been

75 to 108 months for the carjacking, plus 60 months under § 924(c), to prevent the § 924(c) mandatory minimum sentence from *reducing* his total Guidelines sentence. Although the government did not raise this issue on appeal, it is relevant to our consideration of whether Clark's 160-month sentence with the upward departure is reasonable.

extreme conduct contemplated by U.S.S.[G]. § 5K2.8.[3]

The departure was based upon the following additional facts. After the carjackers entered Roehl's car and demanded money, he gave them a pouch containing one twenty dollar bill. Dissatisfied, Clark said, "You better have more than that." Roehl fished through his pockets, found two or three five dollar bills, and handed them to Evans. Clark repeatedly demanded more money, telling Evans to "pop him, pop him, just pop him." After driving a few blocks, Clark pulled over, turned around, held a gun to Roehl's head, and said, "you're a dead man. You're gonna die here." He cocked the gun, placed it against Roehl's temple, and told him, "Do you know what that means? It means you're gonna die. It means you're a dead man." After holding the gun at Roehl's head for a few moments—during which Roehl testified that he waited to be shot—Clark told him to get out of the car, and the assailants drove away.

A court may depart from the Guidelines range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see* U.S.S.G. § 5K2.0, p.s. In reviewing a district court's decision to depart from the Guidelines, we examine

> (1) whether, as a question of law, the circumstances the district court relied on for departure are sufficiently unusual in kind or degree to warrant departure; (2) whether, as a question of fact, the circumstances justifying departure actually exist; and (3) whether the sentence is unreasonable.

*United States v. Nomeland,* 7 F.3d 744, 747 (8th Cir.1993); *see Williams v. United States,* 503 U.S. 193, 201–03, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992).

■■■ Clark argues that the district court erred in departing because the factors on which it relied—abduction of the victim and use of a firearm—have already been taken into account in the guidelines for carjacking and firearms; his conduct is therefore not .sufficiently unusual in kind or degree to warrant an upward departure under U.S.S.G. § 5K2.8. It is true that carjacking by its nature involves force, that U.S.S.G. § 2B3.1(b)(4) takes into account abduction of the victim "to facilitate commission of the offense or to facilitate escape," and that 18 U.S.C. § 924(c) provides a penalty for use of a gun during a carjacking. However, if a factor included in the applicable guidelines and adjustments is present to a degree substantially in excess of that which is ordinarily involved in the offense, an upward departure will be upheld. *See United States v. Joshua,* 40 F.3d 948, 951–52 (8th Cir.1994); U.S.S.G. § 5K2.0, p.s.

Clark asserts that Roehl was neither physically nor psychologically harmed, and that the abduction lasted for only two or three minutes. However, "§ 5K2.8 recognizes that departure may be appropriate when the defendant's actions are heinous, cruel, or brutal beyond the characteristics inherently associated with the crime being sentenced." *United States v. Kelly,* 1 F.3d 1137, 1143 (10th Cir.1993). Criminal conduct that does not cause physical injury can nonetheless be "unusually heinous, cruel, brutal or degrading to the victim." *See United States v. Perkins,* 929 F.2d 436 (8th Cir.1991). There can be no doubt that Clark's gratuitous inhumane conduct psychologically harmed Roehl, a young preacher who had just moved from rural Iowa to Minneapolis. We will not second-guess the district court's finding that the conduct was sufficiently extreme to warrant a § 5K2.8 upward departure.

At sentencing, the district court carefully explained why Clark deserved a § 5K2.8 upward departure:

> In this Court's view, your crime and your acts were not within the heartland. If you stick a gun in somebody's face and you say get out of the car, I'm stealing it, that's a terrible thing to do.... But then to take a private citizen, who's doing nothing more than driving down the road, and stick a

---

**3.** U.S.S.G. § 5K2.8, p.s., authorizes a departure "[i]f the defendant's conduct was unusually hei-

nous, cruel, brutal, or degrading to the victim...."

gun to their head, travel around, rob the person, terrorize them, tell them, now you're gonna die, repeat it, abuse and debase that person, is not within the heartland....

Particularly in light of the fact that the upward departure produced a total sentence that apparently does not exceed the correct Guideline range, *see supra* note 2, we conclude that the departure was well within the district court's substantial sentencing discretion.

The judgment of the district court is affirmed.